**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUNE CAREY MOORE, | ) | CASE NO. 1:25-CV-238 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| v. | ) | |
| | ) | |
| CHSI EMP LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

## I.     INTRODUCTION

Plaintiff June Carey Moore ("Ms. Moore") alleges that Defendant CHSI EMP LLC ("CHSI") did not compensate her for all the overtime hours she worked for the company between November 2021 and March 2023, in violation of the Fair Labor Standards Act, 29 U.S.C. § 207. (Compl., ECF No. 1.) CHSI has denied these allegations and asserted affirmative defenses. (Ans., ECF No. 7.)

The parties have consented to a magistrate judge exercising jurisdiction over this case pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 10; Non-document Order, May 28, 2025.) Currently pending is CHSI's Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) and Request for Expedited Ruling. ("Motion," ECF No. 23.)

For the following reasons, the Court GRANTS IN PART AND DENIES IN PART the Motion. Specifically, the Court grants the Motion to the extent that it requests expedited briefing and a ruling by April 3, 2026. The Court previously ordered expedited briefing (*see* Non-document order, Mar. 31, 2026) and now enters its order on the Motion on April 3, 2026. But the Court otherwise denies the Motion.

## II.    PROCEDURAL HISTORY

On February 6, 2025, Ms. Moore filed a complaint against CHSI, alleging that she worked for CHSI as a mobile case manager between November 2021 and March 2023 and was not paid for all the overtime hours she worked. (Compl., ECF No. 1.) She alleged that she regularly worked longer than forty hours per week during her employment, but CHSI refused to pay her overtime wages as required by the FLSA, 29 U.S.C. § 207.

CHSI admitted that it is a covered employer under the FLSA, that it employed Ms. Moore as a mobile case manager at multiple locations in Cleveland between November 2021 and March 2023, and that Ms. Moore was a non-exempt employee engaged in commerce or employed in an enterprise engaged in commerce. (Ans., ECF No. 7, PageID# 17.) But CHSI denied that Ms. Moore regularly worked overtime or that it failed to pay her overtime wages. (*See id.*) CHSI also asserted affirmative defenses. (*Id.*, PageID# 18–19.)

On May 28, 2025, the case was transferred to this Court's docket pursuant to the consent of the parties. (Non-document order, May 28, 2025; *see also* Consent, ECF No. 10.)

At the parties' request, the Court held a status conference on December 3, 2025. (Minutes of Proceedings [non-document], Dec. 3, 2025.) At that status conference, the parties reported that they were working to resolve a discovery dispute. (*Id.*) The Court therefore vacated the fact discovery and dispositive motions deadlines and set a further status conference for January 5, 2026. (*Id.*)

At the January 5, 2026 status conference, the parties reported that they had not resolved the dispute. (*See* Minutes of Proceedings, Jan. 5, 2026.) The Court therefore set a briefing schedule. (*Id.*)

After briefing (*see* ECF Nos. 16, 18, 21), the Court entered a memorandum opinion and order resolving the discovery dispute on March 25, 2026. (ECF No. 22.)

As the Court stated in that memorandum opinion and order:

> During the course of this litigation, Ms. Moore served a set of requests for production of documents on CHSI. CHSI responded on September 25, 2025. (Mot. Ex. B, ECF No. 16-3.) CHSI produced a number of documents to Ms. Moore, but it consistently redacted the names of nonparty patients based on a claim that the names were protected by the physician–patient privilege. (See ECF No. 16-13, PageID# 106.) Specifically, these documents are emails between employees of the behavioral health service and Ms. Moore regarding her patient and billing notes; the names of the patients are redacted. (ECF No. 16-5, 16-6, 16-9, 16-10.)
>
> . . .
>
> Ms. Moore contends that the patient names contained in the various email chains are relevant and necessary to her case because—if they match Ms. Moore's own personal notes of the services rendered—they would corroborate Ms. Moore's claim that she kept accurate records of her work hours and support her arguments that CHSI kept inaccurate records and should have known that she was working overtime. (See ECF No. 16, PageID# 57–58.)
>
> CHSI does not seem to dispute the relevance of the redacted information. Instead, it argues that it cannot provide unredacted names by operation of state and federal laws and regulations. CHSI acknowledges that the Health Insurance Portability and Accountability Act ("HIPAA") allows a court to order disclosure of protected health information in a civil action. (ECF No. 18, PageID# 120.) But it argues that the Public Health Service Act, 42 U.S.C. § 290dd-2, prohibits disclosure.

(ECF No. 22, PageID# 163–64.)[1]

---

[1] Ms. Moore also requested that CHSI produce "all other documents on which Defendant bases any defense to Plaintiff's claim." (ECF No. 16-3, PageID# 83.) And Ms. Moore requested discovery sanctions. (ECF No. 16, PageID# 65–70.) Ms. Moore does not seek a 28 U.S.C. § 1292(b) certificate for an interlocutory appeal with respect to the Court's resolution of those issues. With respect to disclosure of the unredacted patient names, Ms. Moore raised several arguments, including that disclosure is prohibited pursuant to 42 U.S.C. § 290dd-2, would violate Ms. Moore's ethical obligations under Ohio Admin. Code § 4758-8-01 and Ohio Rev. Code § 4758.06, is not permitted under an Ohio common law exception to the physician–client privilege, and would expose it to civil liability in a lawsuit brought by a patient whose identity was disclosed. Again, Ms. Moore only seeks a § 1292(b) certificate with respect to the Court's finding that disclosure is authorized under 42 U.S.C. § 290dd-2 and its implementing regulations.

3

While the Court presumes familiarity with its opinion and order resolving the dispute, the

Court notes that it stated as follows in that opinion:

> After careful consideration, the Court finds that Ms. Moore has shown "good cause" to obtain an order requiring disclosure here. First, there is no dispute that the patient names are relevant to Ms. Moore's claims and CHSI's defenses. CHSI denies that Ms. Moore routinely worked overtime, but she contends that her contemporaneous notes show that she did. The question of whose records are more credible is a central part of this case, and CHSI's contemporaneous records of the patients Ms. Moore worked with and dates that she worked with them could very well affect a factfinder's evaluation of credibility.
>
> Second, it does not appear that other ways of obtaining this information are available or would be effective. *See Fannon v. Johnston*, 88 F.Supp.2d 753, 759 (E.D. Mich. 2000). The records are uniquely within CHSI's custody and control. Third, the public interest and need for disclosure outweigh the potential injury to the residents, the physician–patient relationship, and the treatment service. The Court disagrees that there is no public interest to be found here. The parties and the Court have an important interest in the "search for the truth and for a just result in this litigation." *Hughes v. City of Louisville*, NO. 3:02CV-60-S, 2005 WL 8174380, at *6 (W.D. Ky. Jan. 26, 2005). And the public has an interest in seeing that covered employers comply with federal employment laws.
>
> The Court further finds that the residents' privacy interest can be adequately protected by means of a protective order and otherwise throughout the course of litigation. The Court agrees that the residents' privacy interest is reduced in this particular case because the disclosure sought is the disclosure of their names to one of their treating professionals. Ms. Moore already knows who she treated. The risk, then, is that disclosure to Ms. Moore will somehow lead to further disclosures.
>
> Here, the Court is confident that it can craft appropriate safeguards to protect the residents' identities. The central question, as the parties frame it, is whether the patient names and dates of service as reflected in these emails match Ms. Moore's personal notes. The actual identity of the resident, therefore, is not particularly relevant beyond confirming whether the parties' records match. The Court does not see how the residents' privacy interest could not be adequately addressed, then, by referring to residents by initials only (or by a generic term like "Patient 1" and "Patient 2"). Accordingly, the Court finds that good cause exists to order the disclosure of the unredacted emails pursuant to Section 290dd-2(b)(2)(C).

(*Id.*, PageID# 165–66.)

The Court therefore ordered as follows:

> The parties are directed to confer and file, within fourteen days, a joint proposed protective order. The order must qualify as a HIPAA qualified protective order and may contain additional limitations upon which the parties may agree. If the parties cannot reach an agreement on all the terms of the protective order, the parties shall file a notice identifying the area(s) of disagreement and briefly set forth the parties' positions on each area.
>
> Within fourteen days of the Court's entry of a protective order, CHSI is ordered to produce unredacted copies of the documents Bates stamped CHSI EMP 00223, 00224, 00232, 00233, 00236, 00237, and 00238.

(*Id.*, PageID# 170–71.)

Five days later—on March 30, 2026—CHSI filed the Motion. (ECF No. 23.) CHSI asks the Court to sign an order certifying the following question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

> Whether the "good cause" standard of 42 U.S.C. § 290dd-2(b)(2)(C), as further defined by 42 C.F.R. § 2.64(d), is satisfied with respect to the identity records of nonparty substance abuse treatment patients who have not placed their treatment at issue in litigation and who have not consented to disclosure, where the requesting party's asserted need is to corroborate the records of a party-litigant, and where the precedent on which the court relied involved disclosure of a litigant's own treatment records in a case where that litigant placed her own drug use directly at issue.

(ECF No. 23-1, PageID# 185–86.)

CHSI requested that the Court issue a ruling on its Motion by April 3, 2026. (ECF No. 23, PageID# 182.) The Court ordered expedited briefing. (Non-document order, Mar. 31, 2026.) Ms. Moore filed a brief in opposition to the Motion on April 2, 2026. (ECF No. 24.)

This Memorandum Opinion and Order follows.

### III.    LAW & ANALYSIS

Normally, a party may appeal only from "final decisions of the district court[]." *See* 28 U.S.C. § 1291. Congress enumerated specific exceptions, in which the appellate court has jurisdiction over other particular orders of a trial court. *See* 28 U.S.C. § 1292(a). None of those enumerated exceptions apply here. But Congress also provided as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [the judge] shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b).

Thus, a trial court may certify an order for interlocutory appeal if it is of the opinion that three conditions exist: (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See Guzman v. USAA Federal Savings Bank*, No. 3:23 CV 1193, 2024 WL 3071176, at *1 (N.D. Ohio June 20, 2024) (citing *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002)); *see also In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017).[2]

CHSI contends that each condition exists here. Ms. Moore argues that none of these conditions are met.

---

[2] While the Court engages in its own consideration of these factors, it is mindful that the Sixth Circuit has exercised its discretion to accept interlocutory appeals under § 1292(b) only in "exceptional circumstances." *See In re Gen. Motors, LLC*, No. 19-0107, 2019 WL 8403402, at *1 (6th Cir. Sept. 25, 2019); *United States v. Stone*, 53 F.3d 141, 143–44 (6th Cir. 1995) (citation omitted) ("doubts regarding appealability . . . [should be] resolved in favor of finding that the interlocutory order is not appealable.")

After careful consideration, the Court finds that CHSI fails to establish at least two out of the three necessary conditions.

First, the Court's March 25, 2026 order does not involve a controlling issue of law. A question of law is controlling when reversal of the order would terminate the action or a determination of the issue on appeal would materially affect the outcome of the litigation. *E.g.*, *MidFirst Bank v. Johnston*, No. 5:13–mc–49, 2014 WL 694943, at *3 (N.D. Ohio Feb. 21, 2014). Because discovery decisions are generally left to the discretion of the trial court, they do not often create a legal question certifiable for interlocutory appeal. *See In re City of Memphis*, 293 F.3d at 351. And while courts should not "hesitate to certify an interlocutory appeal" when "litigants [are] confronted with a particularly injurious or novel privilege ruling" or "a privilege ruling involves a new legal question or is of special consequence," the Supreme Court has instructed that even most privilege issues will not necessitate an interlocutory appeal. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109–11 (2009).

Here, there can be no argument that reversal of the challenged order would terminate this action. It would not. Instead, CHSI seems to argue that determination of whether "good cause" exists to disclose these patient names would materially affect the outcome of the litigation. But it fails to explain how.

When it comes to the outcome of this particular litigation, the disclosure (or not) of a small number of unredacted emails is a relatively small piece of the case. Resolution of this issue is not so related to and wrapped up with the merits that an appellate resolution could materially affect whether Ms. Moore or CHSI prevail on their various claims and defenses. *Compare Buddenberg v. Estate of Weisdack*, 711 F.Supp.3d 712, 824–25 (N.D. Ohio 2024) (certifying an interlocutory appeal where a spoliation finding and the resulting sanctions under consideration might affect the

underlying merits of the litigation, such that appellate resolution would bring the case "to finality (or close to it) if the Sixth Circuit affirms or by allowing one trial on all issues following remand").

Second, an immediate appeal cannot materially advance the ultimate termination of this litigation. CHSI argues that it would save time in this litigation for the Sixth Circuit to resolve this discovery dispute. CHSI points out that, upon reversal, the parties would no longer need to negotiate the terms of a protective order. Or, if affirmed, the appellate court's clarification of the "good cause" standard would provide "guidance that may affect their litigation strategies going forward, including with respect to any additional discovery requests . . . ."

While CHSI suggests that this is an issue that will recur throughout discovery, that risk appears to be minimal because Ms. Moore does not suggest in her response that she will be seeking further patient names through written discovery. Rather, Ms. Moore argues that, if the appeals court were to reverse, she would "simply . . . call Defendant's representative in her case-in-chief to confirm that each of the residents that she has listed in her Notebook were residents . . . ." (ECF No. 24, PageID# 193.) And Ms. Moore acknowledges that using initials, or some other workaround to preserve confidentiality, would have to be used in that case.

In any event, the Court does not see how an interlocutory appeal could possibly streamline this case. The timeline for the appeals court to resolve this issue far exceeds the time necessary to resolve the terms of the protective order. And more importantly, whether the order would be reversed or affirmed, the litigation would proceed in substantially the same manner—complete fact discovery, allow for dispositive motions, and then proceed to trial if necessary. Whether several discrete exhibits are produced in redacted or unredacted form would not materially affect any of those litigation stages. "When litigation will be conducted in substantially the same manner

8

regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d at 351.

Having found these two conditions not met, the Court need not consider whether a substantial ground for difference of opinion exists regarding the correctness of its March 25, 2026 decision. That said, while the Court acknowledges the "paucity of case law" analyzing the standards under which substance abuse records may be released under a § 290dd–2 showing of "good cause"—*Fannon v. Johnston*, 88 F. Supp.2d 753, 758 (E.D. Mich. 2000)—the Court notes that CHSI points to no caselaw to support its position that the Court's analysis (which tracks the language of the relevant statute and regulations) was incorrect.

Before concluding, the Court notes that CHSI relies heavily on what it characterizes as "the irreversible harm" of disclosure. But for the reasons discussed in its previous order for finding "good cause," the Court does not find any "particularly injurious" harm here. That is because CHSI will be providing Ms. Moore with the unredacted names of her own patients, Ms. Moore already knows the names of these patients, disclosure would be under a protective order, and there will be no public disclosure of these names in the course of the litigation.

Finally, CHSI suggests in its motion that the Court's March 25, 2026 order may be immediately appealable as of right pursuant to the collateral-order doctrine. (*See* ECF No. 23, PageID# 178–79.) CHSI argues that the Sixth Circuit has not considered whether a § 290dd-2 disclosure order falls within the collateral-order doctrine. It says, without citation to any caselaw, that "Section 1292(b) certification offers a vehicle for the Sixth Circuit to resolve these questions in an orderly manner, with full briefing and without the time pressure inherent in emergency mandamus proceedings." (*See id.*, PageID# 179.)

9

CHSI provides no authority to support an argument that the Court could certify an interlocutory appeal under § 1292(b), notwithstanding that the elements for such a certification are not met, if the Court nevertheless agreed that the order would be appealable under the collateral-order doctrine. Therefore, the Court expresses no opinion about whether the challenged order is appealable under the collateral-order doctrine, as that question is not properly before the Court at this time.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant CHSI's Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) and Request for Expedited Ruling. (ECF No. 23.)

The Court GRANTS Defendant's request for expedited briefing and review.

The Court DENIES Defendant's request to certify the March 25, 2026 memorandum opinion and order (ECF No. 22) for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**

*/s/ Jennifer Dowdell Armstrong*
JENNIFER DOWDELL ARMSTRONG
UNITED STATES MAGISTRATE JUDGE

Dated:  April 3, 2026

10